UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS L. RUTLEDGE,<br><br>    Plaintiff,<br><br>    v.<br><br>P. LAM,<br><br>    Defendant. | Case No. 18-cv-05530-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM**<br><br>Re: Dkt. No. 25 |

Plaintiff filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendant Lam was deliberately indifferent to his serious medical needs. Dkt. Nos. 1, 10. Now pending before the Court is defendant Lam's motion for summary judgment. Dkt. Nos. 25, 26, 27. Plaintiff has filed an opposition and defendant has filed a reply. Dkt. Nos. 41, 46. For the reasons set forth below, defendant's motion for summary judgment is DENIED.

**DISCUSSION**

Plaintiff alleges that he injured his right arm on March 8, 2017 and that, between March 8 and May 31, 2017, defendant Lam failed to provide treatment for the injury, resulting in a torn triceps tendon that required reconstructive surgery to fix. Dkt. Nos. 1, 46. Defendant Lam argues that he is entitled to summary judgment because (1) plaintiff did not have a torn triceps tendon prior to May 18, 2017; (2) defendant Lam promptly investigated the cause of plaintiff's arm pain when he first learned of it on May 18, 2017; (3) defendant Lam reasonably treated plaintiff's pain with pain medication; and (4) defendant Lam is entitled to qualified immunity because he provided medically reasonable treatment. Dkt. Nos. 25, 41.

**I.**     **Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show there is

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**II.     Legal Standard for Deliberate Indifference to Serious Medical Needs**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the

seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Id.*

  A plaintiff need not prove complete failure to treat. Deliberate indifference may be shown where access to medical staff is meaningless as the staff is not competent and does not render

competent care. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and without examination prescribed contraindicated sedatives). Similarly, deliberate indifference is shown when the prison fails to provide the medically necessary treatment, even if it provides other important medical treatment. *Edmo v. Corizon*, 935 F.3d 757, 793-94 (9th Cir. 2020) (although prison provided extensive treatment, Eighth Amendment was violated because prison "stopped short of what was medically necessary"). A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060.

### III.   Factual Background

The following facts are undisputed.

On March 8, 2017, plaintiff suffered a fall and complained of pain in both his right leg and his right elbow. Dkt. No. 25-1 at 286. That same day, he received x-rays of his right elbow, right femur, and right hip. Dkt. No. 25-1 at 53-55, 46. Because the x-ray indicated a fracture in plaintiff's right leg and CTF is not equipped to diagnose or treat orthopedic injuries, defendant Lam referred plaintiff to Dr. Kowall at Twin Cities Community Hospital for treatment of the right leg. Dkt. No. 25-1 at 246. Dr. Kowall took two x-rays of plaintiff's hips and he treated plaintiff's leg. Dkt. No. 25-1 at 51-52. Plaintiff saw defendant Lam for follow-up appointments on March 24, April 21, and May 9. Dkt. No. 25-1 at 243-44; Dkt. No. 26 ("Lam Decl.") at ¶¶ 12-13, 15, 18-20. On May 18, 2017, plaintiff complained to a nurse of muscle atrophy, weakness and a tingling sensation in the right arm. Dkt. No. 25-1 at 7, 252; Lam Decl. ¶ 24. When the nurse informed defendant Lam of plaintiff's complaint, defendant Lam directed the nurse to provide plaintiff printouts of stretch exercises for the right arm and ordered an x-ray of the cervical spine. Lam Decl. ¶ 27. On May 31, 2017, Dr. Kowall examined plaintiff's right arm without a referral and found that plaintiff had "decreased active extension" of the right elbow associated with pain in the triceps region, marked atrophy of the right arm triceps, and tenderness over the olecranon process. Dkt. No. 25-1 at 290-91. Dr. Kowall diagnosed plaintiff as likely having a right triceps tendon rupture and recommended an immediate MRI of plaintiff's right arm. Dkt. No. 25-1 at 251, 291.

1    On June 6, 2017, defendant Lam submitted an "urgent" referral for an MRI of plaintiff's right

2    elbow and upper arm. Dkt. No. 25-1 at 49, 56, 236. On June 16, 2017, an MRI scan was taken of

3    plaintiff's right arm. Dkt. No. 25-1 at 49. Defendant Lam reviewed the scan and then forwarded

4    it to Dr. Kowall for review. Lam Decl. ¶ 36. On July 21, 2017, after having met with plaintiff and

5    obtained plaintiff's consent to surgery, defendant Lam referred plaintiff to surgery with Dr.

6    Kowall. Dkt. No. 25-1 at 235, 238; Lam Decl. ¶ 37. Dr. Kowall completed a successful surgery

7    to repair the torn tendon on July 31, 2017. Dkt. No. 25-1 at 257; Lam Decl. ¶ 38. Defendant Lam

8    prescribed plaintiff pain medication during the relevant time period. Dkt. No. 25-1 at 30-43.

9    Plaintiff makes the following relevant allegations.

10   On March 22, 2017, when plaintiff was seen by Dr. Kowall pursuant to the referral for an

11   evaluation of his fractured right femur, plaintiff asked Dr. Kowall to also examine his right arm.

12   Dkt. No. 1 at 16; Dkt. No. 46 at 11. Dr. Kowall stated that he needed a referral for the right arm

13   before he could conduct an examination. Dkt. No. 1 at 16; Dkt. No. 46 at 11.

14   At his March 24, 2017 appointment with Dr. Lam, plaintiff requested a referral to Dr.

15   Kowall for evaluation of his right arm, but defendant Lam responded that they should wait and see

16   if plaintiff's arm improved, and that they would discuss it at the next visit. Dkt. No. 1 at 16; Dkt.

17   No. 46 at 11.

18   On April 21, 2017, plaintiff informed defendant Lam that he was still having difficulties

19   with his right arm and that the muscles had noticeably atrophied. Dkt. No. 1 at 20; Dkt. No. 46 at

20   15. Defendant Lam conducted a cursory examination of plaintiff's right arm, but did nothing else.

21   Dkt. No. 1 at 20; Dkt. No. 46 at 15.

22   On April 26, 2017, plaintiff was seen by Dr. Kowall. Dr. Kowall told plaintiff that he did

23   not know why defendant Lam had not replied to his earlier requests for a referral to authorize

24   examination of plaintiff's right arm. Dkt. No. 1 at 20 Dkt. No. 46 at 15. Dr. Kowall told plaintiff

25   that he would again request a referral from defendant Lam. Dkt. No. 1 at 20.

26   On May 9, 2017, plaintiff informed defendant Lam that his arm caused him constant pain

27   and that the muscles were noticeably smaller. Dkt. No. 1 at 18 Dkt. No. 46 at 13. Defendant Lam

28   did not examine plaintiff's arm and joked that inmates were always "crying about nothing." Dkt.

1  No. 1 at 18; Dkt. No. 46 at 13.

2  On May 18, 2017, a nurse informed defendant Lam that plaintiff had expressed concern
3  about his right arm atrophying, and that he was experiencing a tingling sensation and weakness in
4  the right arm. In response, defendant Lam provided a printout of stretching exercises. Dkt. No. 1
5  at 18; Dkt. No. 46 at 13.

6  Defendant Lam disputes the above allegations.

7  Defendant Lam alleges that plaintiff did not report any significant issues with, or injury to,
8  his right arm prior to May 18, 2017, whether to prison medical staff, directly to defendant Lam, or
9  to Dr. Kowall. Defendant Lam denies that the conversations reported above by plaintiff took
10 place. Lam Decl. ¶¶ 9-22.

11 Defendant Lam alleges that, prior to May 18, 2017, the health concerns reported by
12 plaintiff, as memorialized in plaintiff's medical notes; defendant Lam's examinations of plaintiff;
13 and plaintiff's x-rays did not indicate a possible torn triceps tendon ("TTR"). Lam Decl. ¶¶ 10,
14 11, 13, 15, 18, 21-23. Defendant Lam states that someone suffering from TTR would be unable to
15 move his arm and there would be bruising around the elbow; and that an x-ray would show a
16 fracture, dislocation, arthopathy, effusion, or olecranon spur. Lam Decl. ¶¶ 10, 21. Defendant
17 Lam concludes that, prior to May 18, 2017, plaintiff did not suffer from TTR. Defendant Lam
18 notes that Dr. Kowall's medical notes state that plaintiff's concern regarding his right arm was
19 raised for the first time on May 31, 2017, contradicting plaintiff's claims that he expressed
20 concern about his right arm earlier. Lam Decl. ¶ 30; Dkt. No. 25-1 at 251-52. Defendant Lam
21 argues that, prior to May 18, 2017, plaintiff suffered from, at most, minor arm pain that would
22 have been addressed by the pain medication that defendant Lam had prescribed for plaintiff's
23 other injuries. Lam Decl. ¶¶ 13, 15, 28.

24 Defendant Lam does not recall any referral requests from Dr. Kowall, but acknowledges
25 that referral requests from outside providers are not sent directly to him. Lam Decl. ¶¶17

26 **IV.   Analysis**

27 Viewing the evidence in the light most favorable to plaintiff and resolving all factual
28 disputes in favor of plaintiff, as required at summary judgment, there is a triable issue of fact as to

whether plaintiff informed defendant Lam that he was suffering arm pain prior to May 18, 2017, and whether defendant Lam ignored or dismissed plaintiff's concerns. The Court must presume that, on March 24, April 21, and May 9, plaintiff informed defendant Lam that he was suffering arm pain from the injury sustained on March 8, 2017, and that defendant Lam responded by first telling him to wait until the next appointment to discuss treatment for the right arm, by only conducting a cursory examination at the following appointment, and by responding dismissively at the following appointment.

Defendant Lam opines that plaintiff did not have a torn triceps tendon prior to May 18, 2017, arguing that TTR has clear physical indicators which plaintiff lacked; that the March 8, 2017 x-ray did not indicate TTR; and that there is no record in plaintiff's medical file of plaintiff reporting pain in his right arm prior to May 18, 2017. None of these arguments establish that there is no dispute as whether defendant Lam responded reasonably to plaintiff's complaints of pain in his right arm. First, it is possible that plaintiff sustained an injury to his right arm on March 8, 2017 that resulted in a torn triceps tendon because the injury was left untreated. Second, viewing the facts in the light most favorable to plaintiff, defendant Lam only examined plaintiff's right arm once, and solely in a cursory manner. A cursory one-time examination could miss the clear physical indicators. Third, the March 8, 2017 fall was severe enough to fracture plaintiff's right leg, making it plausible that it could have injured plaintiff's right arm as well. Fourth, it is unclear if the x-ray definitively ruled out TTR. Dr. Kowall sought an MRI, not an x-ray, to make a definitive diagnosis regarding TTR. Finally, plaintiff's medical record does not conclusively establish that plaintiff did not complain about his right arm, and determining whether plaintiff's allegations or defendant's interpretation of plaintiff's medical records is more credible is a determination that the Court may not make at summary judgment.

Defendant Lam argues that if plaintiff had complained of pain, the pain medication that he prescribed for plaintiff's other health conditions constituted a reasonable response to the medical issue. This argument also fails to establish that there is no triable issue of fact. Plaintiff was not seeking treatment for pain; he was seeking treatment for an injured right arm.

//

### V.      Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'" *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.* To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

As discussed above, making all reasonable inferences in plaintiff's favor as required at this stage, there is a triable issue of fact as to whether a constitutional violation occurred. It has long been established that prison officials violate the Eighth Amendment when they "purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc); *see also Mahler v. Gatten*, 40 Fed. Appx. 415, 418 (9th Cir. 2002) (denying qualified immunity because it is clearly established that refusing requests from a prisoner to alleviate the prisoner's serious medical condition for no reason demonstrates deliberate

indifference to medical needs). If plaintiff's version of events is credited, a reasonable jury could find that the manner in which defendant Lam responded to plaintiff's complaints of arm pain violated his clearly established Eight Amendment right to be free from deliberate indifference to his serious medical needs.

Accordingly, defendant Lam is not entitled to qualified immunity based on the record currently before the Court. Any such entitlement will depend on the resolution of disputed issues of fact. *See Tolan v. Cotton*, 572 U.S. 660, 657 (2014) (in determining whether a defendant is entitled to qualified immunity, court must resolve factual disputes in favor of non-moving party).

## VI. Plaintiff's Additional Arguments

Plaintiff raises three additional arguments in his summary judgment motion.

First, plaintiff argues that CDCR and CTF policies contributed to his current disability. On November 16, 2018, the Court screened the complaint at the commencement of this action and found that the complaint only stated a cognizable claim against defendant Lam for his treatment, or lack thereof, of plaintiff's right arm. Dkt. No. 10. The Court dismissed the remaining claims and defendants with leave to amend to correct specified deficiencies. *See id.* Plaintiff informed the Court that he did not wish to file an amended complaint and only wished to proceed on the Eighth Amendment claim against defendant Lam. Dkt. No. 12. To the extent that plaintiff now wishes to raise a claim regarding CDCR and CTF policies, the Court DENIES leave to amend the complaint at this late date. While there is a strong policy favoring liberal amendment, a district court may properly deny leave to amend where there is "apparent or declared" evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Not all the factors merit equal weight[;] . . . it is the consideration of prejudice to the opposing party that carries the great weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Allowing plaintiff to amend at this late date would unduly prejudice Defendant Lam because it would allow plaintiff to circumvent summary judgment by asserting a new claim, require re-opening of discovery, and would force Defendant Lam to restructure his discovery and

litigation strategy two years after this action was filed. The Court therefore exercises its discretion and declines to allow plaintiff to amend the complaint at this late date to add this claim. *See, e.g.*, *Schlacter–Jones v. General Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) ("A motion for leave to amend is not a vehicle to circumvent summary judgment"), *abrogated on other grounds in Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001); *Quan v. San Francisco Police Dep't*, C No. 10–01835 MEJ, 2011 WL 2470477, *5 (N.D. Cal. Jun 21, 2011) ("[t]he fact that Plaintiffs now seek to recast their claims would force Defendants to restructure their discovery and litigation strategy over a year into the case and would moot their summary judgment motions") (collecting district court cases denying leave to amend after the filing of a summary judgment motion).

Second, plaintiff argues that there are facts supporting Section 1983 liability on the part of CTF correctional officials Hatton, Lewis, Truitt, Posson, Sweet, Shen, Wnuk, Amador, Viruet, and Stout. Dkt. No. 46 at 3-6. These defendants were dismissed with leave to amend in the Court's screening order, and plaintiff chose not to file an amended complaint renaming these defendants. To the extent that plaintiff now wishes to amend his complaint at this late date to add these defendants after declining to do so earlier, the Court DENIES leave to amend to add these defendants.

Finally, plaintiff argues that defendant's counsel refused to provide relevant discovery. As explained in the Court's December 19, 2018 Order of Service and the *Rand* warning provided by defendant Lam, *see* Dkt. No. 25 at 5-6, plaintiff must submit evidence in opposition to the summary judgment motion. It is therefore plaintiff's responsibility to obtain the relevant discovery prior to opposing a dispositive motion. Expressing dissatisfaction with discovery responses in an opposition tp a dispositive motion does not meet the evidentiary requirements needed to oppose a summary judgment motion. Nor can the Court resolve discovery disputes in the context of a summary judgment motion.[1]

---

[1] The appropriate time to resolve discovery disputes is prior to the filing of a dispositive motion. The appropriate procedure for resolving discovery dispute is to first meet and confer in a good faith effort to resolve this issue, as required by Fed. R. Civ. P. 37 and N.D. Cal. L. R. 37-1(a), and then, if unable to resolve the issue, file a motion to compel further responses to the discovery

**CONCLUSION**

For the foregoing reasons, the Court orders as follows.

1. The Court DENIES defendant's motion for summary judgment. Dkt. No. 25.

2. The case is hereby REFERRED to Magistrate Judge Robert Illman for settlement proceedings pursuant to the Pro Se Prisoner Mediation Program. Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Illman's calendar will permit. Magistrate Judge Illman shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon. The Clerk is directed to serve Magistrate Judge Illman with a copy of this order and to notify Magistrate Judge Illman that a copy of the Court file can be retrieved from the Court's electronic filing database.

This order terminates Dkt. No. 25.

**IT IS SO ORDERED.**

Dated: October 2, 2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

requests, as set forth in Fed. R. Civ. P. 37.